FILED
2009 Sep-24  PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **SUNSET ENGINEERED** ) | |
| **SYSTEMS, LLC, WEATHER** ) | |
| **TIGHT, INC.,** ) | |
| ) | |
|     **Third-Party Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.: 5:06-CV-1865-VEH** |
| ) | |
| **PRIMEX PLASTICS** ) | |
| **CORPORATION, ADVANCED** ) | |
| **ELASTOMER SYSTEMS, L.P.,** ) | |
| ) | |
|     **Third-Party Defendants.** ) | |

_____

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

This property damage/products liability suit stems from an allegedly defective roofing system manufactured by Defendant SunSet Engineered Systems, LLC ("SunSet") and/or Defendant Weather Tight, Inc. ("Weather Tight") (Doc. 6 ¶ 11) and installed by SunSet (*Id.* ¶ 10) on a building owned by Plaintiff Teledyne Brown Engineering, Inc. ("Teledyne"). All claims between Teledyne and Defendants Weather Tight and SunSet have settled. (Doc. 82).

What remains before the court are the third-party claims filed by Third-Party

Plaintiffs SunSet and Weather Tight against Third-Party Defendants Advanced Elastomer Systems, L.P. ("AES") and Primex Plastic Corporation ("Primex"), who designed, manufactured, and/or supplied the roofing material relating to the roofing system. (Doc. 34 ¶ 3). AES and Primex have each moved for summary judgment as to all three claims. (Docs. 88, 90).[1]

For the reasons discussed more fully below, Primex's Motion for Summary Judgment is **GRANTED** as to Counts I and II and is otherwise **DENIED**. Similarly, AES's Motion for Summary Judgment is **GRANTED** as to Counts I and II and is otherwise **DENIED**.

## II.    STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).[2] A dispute is genuine "if the evidence is such that a reasonable jury could

---

[1] Docs. 89, 91-102, and 105-107 are the parties' related evidence and briefing.

[2] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp*, 456 F.3d at 1274 (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

## III.   ANALYSIS[3]

### A.   Counts I and II Have Been Abandoned as to Defendant AES

The third-party complaint contains three separate counts asserted against both AES and Primex:  Count I for breach of implied warranty of merchantability; Count II for liability under the Alabama Extended Manufacturer's Liability Doctrine

---

version.

[3] The nature of the court's decision on summary judgment does not require a <u>separate</u> statement of facts section.

("AEMLD"); and Count III for common law indemnity.  (Doc. 34).  However, based upon the briefing on summary judgment, the only third-party claim that remains against Third-Party Defendant AES is one for common law indemnity.  All other counts against AES have been abandoned by SunSet and Weather Tight, thereby making summary judgment appropriate as to those claims against AES.  *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); *cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary

4

judgment"); (*See also* Doc. 107 at 1 ("[S]ummary judgment is due on the implied warranty and AEMLD claims because Weather Tight and SunSet have abandoned these claims.") (citation omitted)).

Relatedly, the court is under no independent obligation to develop grounds in opposition to summary judgment on behalf of SunSet and Weather Tight regarding the potential viability of counts I and II against AES as "the onus is upon the parties to formulate arguments[.]" *Dunmar*, 43 F.3d at 599 (citation omitted); *see also id.* ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted)).  Accordingly, summary judgment in favor of AES as to counts I and II of SunSet and Weather Tight's complaint is **GRANTED**.

In contrast to their treatment of claims against AES, SunSet and Weather Tight have opposed summary judgment as to all counts (I, II, and III) asserted against Primex.  Further, SunSet and Weather Tight have opposed summary judgment as to Count III asserted against AES. Therefore, the court will now analyze on their merits SunSet and Weather Right's breach of implied warranty, AEMLD, and common law indemnity claims against Primex and their common law indemnity claim against AES.

## B.      Breach of Implied Warranty of Merchantability - Count I

### 1.      SunSet Was Not In Privity with Primex and Therefore Cannot Assert a Claim of Breach of Implied Warranty of Merchantibility against Primex

Primex argues that SunSet's claim for breach of implied warranty of merchantibility fails because there was no privity of contract between Primex and SunSet.  SunSet does not even <u>mention</u> this argument in its opposition.  Therefore, SunSet has abandoned this claim, and summary judgment in favor of Primex and against SunSet is **GRANTED** as to Count I on this basis.  (*See* discussion at section III.A., *supra*.)

Alternatively, Primex is entitled to summary judgment against SunSet as to Count I because Primex has established that there was no privity between it and SunSet.

A claim for breach of implied warranty of merchantibility seeking exclusively economic damages - as opposed to damages for personal injury - can be maintained only by a plaintiff who was in privity with the defendant.  *State Farm Fire and Cas. Co. v. J.B. Plastics, Inc.*, 505 So. 2d 1223, 1227 (Ala. 1987) ("As to the plaintiff's count based on an implied warranty of merchantability under Code 1975, § 7-2-314, the plaintiff has failed to state a claim for which relief may be granted. While

Alabama's version of U.C.C. § 2-318 has abolished privity requirements in actions involving injuries to natural persons, the privity requirements still remains in cases of strictly economic injury."); *see also Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079, 1087 (Ala. 2003). It is undisputed that SunSet exclusively seeks economic damages and that no privity exists between SunSet and Weather Tight.

Accordingly, Primex's motion for summary judgment as to SunSet's claim for breach of implied warranty is additionally **GRANTED** on the merits for lack of privity.

> **2.      The Applicable Statute of Limitations Bars SunSet's and Weather Tight's Claim of Breach of Implied Warranty of Merchantibility**

In opposing summary judgment, SunSet and Weather Tight have attempted to respond to some of the alternative grounds offered by Primex. However, SunSet and Weather Tight have not met Primex's statute of limitations argument or underlying supporting evidence head on. Indeed, SunSet and Weather Tight do not even mention the timeliness of their warranty claim in their opposition. Therefore, SunSet and Weather Tight have abandoned this claim. (*See* discussion at section III.A., *supra*.)

Alternatively, the court finds that the Primex and AES have established, through undisputed facts, that SunSet's and Weather Tight's claim for breach of implied warranty of merchantibility are barred by the applicable statute of limitations.

Section 7-2-725 Code of Alabama (1975) sets the statute of limitations for breach of warranty at four years after the cause of action has accrued.

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

> (2) <u>A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made</u>, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered; however, a cause of action for damages for injury to the person in the case of consumer goods shall accrue when the injury occurs.

Ala. Code § 7-2-725(1)-(2) (emphasis added). In this instance, Weather Tight and SunSet do not dispute that "tender of delivery" by AES occurred no later than 2002, when SunSet installed the roofing material. Instead, they respond that SunSet "first learned that there were problems with the roofing membrane in late 2004 or early 2005. (Doc. 105 at 3 ¶ 51; *see also* Doc. 97 at 173-74).

However this evidence is insufficient to oppose summary judgment as a matter of law because the appropriate standard to measure the statute of limitations date in a non-personal injury breach of warranty case is "when tender of delivery is made" (*i.e.*, in 2002). This means that the third-party complaint was due to be filed in 2006

to prevent the running of the four-year statute of limitations; instead it was not filed until April 4, 2007.  (Doc. 34).

Additionally, even if the court were to accept the "discovery" theory advanced by SunSet and Weather Tight, SunSet and Weather Tight have not adequately disputed Weather Tight's evidence that their third party complaint, filed on April 4, 2007, was untimely.  On this issue, Weather Tight states, in the "Admitted Facts" section of its brief:

> 51.     SunSet first learned that there were problems with the roof membrane on the Teledyne facility in October, 2004. (Primex Exhibit 7, Deposition of John Fisher, p. 29.)

> 52.     Weather Tight first learned of the roof membrane problems at the end of 2004 or the beginning of 2005, prior to April, 2005. (Primex Exhibit 9, Deposition of William Travis, p. 174.)

(AF Nos. 51, 52).

In opposition to these facts, SunSet and Weather Tight state only:

> 51.     SunSet first learned of problems that could not be resolved in late 2004 or early 2005.  (Primex Exhibit 9, Deposition of William Travis, pp. 173-174)

(Doc. 105 at 3) (emphasis supplied).

SunSet's failure to learn that the "problems could not be resolved" does not adequately dispute Weather Tight's AF 51.  It is enough that SunSet knew of problems with the roof membrane.  SunSet cites no authority - and the court could

find none - for the proposition that the statute of limitations did not begin to run until it also knew that those problems "could not be resolved."

Weather Tight does not dispute AF 52 (that it "learned of the roof membrane problems ... prior to April, 2005") <u>at all</u> and therefore such fact is admitted under Appendix II to the court's Uniform Initial Order.

Having studied the record thoroughly, the court concludes that Primex's motion for summary judgment on the breach of implied warranty claim as barred by the applicable statute of limitations is substantively sound.  Accordingly, summary judgment in favor of Primex and against Weather Tight and SunSet as to Count I is **GRANTED**.

     **3.**     **<u>SunSet and Weather Tight's Claim of Breach of Implied Warranty of Merchantibility Alternatively Fails because Primex is not a "Merchant"</u>**

Code of Alabama 1975 Section 7-2-314 governs an implied warranty claim and provides in part:

> (1) Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale <u>if the seller is a merchant with respect to goods of that kind</u>.

Ala. Code § 7-2-314(1) (emphasis added).

Section 7-2-104 defines "merchant" as follows:

(1) <u>"Merchant" means a person who deals in goods of the kind or otherwise</u> by his occupation <u>holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction</u> or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Ala. Code § 7-2-104(1) (emphasis added).

The undisputed evidence shows that Primex extruded roofing membrane for Weather Tight, which Weather Tight then sold to SunSet.  AF No. 21.[4]  Weather Tight and SunSet concede that Primex had never extruded a material for a roofing application before AES and Weather Tight came to ask Primex to extrude product for Weather Tight.  AF No. 43.  Further, Primex informed Weather Tight that it had not processed a roofing membrane before Weather Tight sought Primex to extrude

---

[4]  The designation "AF" stands for admitted fact and indicates a fact offered by Primex that Weather Tight and SunSet have admitted in their written submissions on summary judgment, in the deposition testimony of their witnesses, or by virtue of any other evidence offered in support of their case.  The court's numbering of admitted facts (*e.g.*, AF No. 21) corresponds to the numbering of Primex's statement of facts as set forth in Doc. 89 and responded to by Weather Tight and SunSet in Doc. 105.

Whenever Weather Tight and SunSet have adequately disputed a fact offered by Primex, the court has accepted their version.  *See Fitzpatrick*, 2 F.3d at 1115 (explaining that whenever facts are in dispute, they are due to be stated in the manner most favorable to the non-moving party).  Therefore, any facts set forth in this opinion are for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

product for Weather Tight. AF No. 44.  Under this set of undisputed facts, Primex cannot be considered a "merchant" because it never dealt in extruding material for a roofing application or held itself out as having specialized knowledge or skill with respect to extruding a material for a roofing application, and therefore no implied warranty of merchantability arose between Primex and Weather Tight and/or SunSet. Therefore, Primex's motion for summary judgment against SunSet and Weather Tight as to Count I is **GRANTED** on this alternative basis.

### 4.     <u>Weather Tight's Claim of Breach of Implied Warranty of Merchantibility Alternatively Fails Because Any Such Warranty Was Expressly Excluded</u>

Alternatively, even if Primex was a "merchant," the credit application delivered to Weather Tight from Primex effectively excluded any implied warranty of merchantibility from Primex to Weather Tight.

Section 7-2-316 governs the exclusion or modification of warranties and states in pertinent part that:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language <u>must mention merchantability and in case of a writing must be conspicuous</u>, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

Ala. Code § 7-2-316(2) (emphasis added).

Exclusionary language is conspicuous when it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it."  Ala. Code § 7-1-201(10).  As further explained:

> Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> > (A) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
> >
> > (B) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

*Id.*

Here, the credit application submitted by Primex to Weather Tight includes the following clause set out from the rest of the terms in contrasting capital letters:

> NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, ARE OR HAVE BEEN MADE BY PRIMEX.  THE COMPANY WILL HAVE NO OBLIGATION OR LIABILITY FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND.

(Doc. 98 at Ex. 10 at Ex. A at 2 (emphasis added)).  The wording is conspicuous and

expressly excludes any implied warranty of merchantability.  Therefore, summary judgment is alternatively appropriate in favor of Primex and against Weather Tight as to Count I because, to the extent an implied warranty of merchantability existed, it was effectively excluded as part of the credit application process.[5]

**C.    Alabama Extended Manufacturer's Liability Doctrine - Count II**

    **1.    <u>Primex is Entitled to Judgment as a Matter of Law as to Count II because Neither Weather Tight nor SunSet Have Established a Prima Facie Case under the AEMLD</u>**

Primex seeks judgment as a matter of law against Weather Tight and SunSet because neither Weather Tight nor SunSet have established a prima facie case under the AEMLD.

Liability under the AEMLD requires proof from a plaintiff that:

> "(1) he suffered injury or damage to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
>
> > "(a) the seller engaged in the business of selling such a product, and

---

[5]  The court is thus not persuaded by Weather Tight's unsupported counter-argument that the credit application, by itself, is inadequate to provide sufficient notice of a disclaimer by Primex. (Doc. 105 at 12-13).  As stated above, Ala. Code § 7-2-316(2) requires any exclusion of the implied warranty of merchantability to "be by <u>a writing</u> and conspicuous" (emphasis supplied).

"(b) it is expected to and does reach the user
or consumer without substantial change in
condition in which it is sold."

*See, e.g., Rutledge v. Arrow Aluminum Industries, Inc.*, 733 So. 2d 412, 415 (Ala.

Civ. App. 1998) (quoting *Casrell v. Altec Industries, Inc.*, 335 So. 2d 128, 132-33

(Ala. 1976)).  With respect to SunSet and Weather Tight's AEMLD claim, Primex

contends that liability against it cannot be sustained as a matter of law because, in this

instance, neither Weather Tight nor SunSet was the "ultimate user" or "consumer"

within the meaning of the AEMLD; rather, Teledyne was.

In the absence of any authority, SunSet and Weather Tight unpersuasively

maintain that they "are fundamentally the end user or consumer called for in the

statute" because they "are currently 'standing in the shoes' of Teledyne in order to

recoup [the] money [that they] paid to Teledyne as a result of the property damage."

(Doc. 105 at 13).  The court is unaware of - and SunSet and Weather Tight have

failed to call to the court's attention - any so-called "standing in the shoes" subset of

plaintiffs that is permitted under the AEMLD.  Therefore, summary judgment in favor

of Primex on Weather Tight's and SunSet's AEMLD claim is **GRANTED** because

neither third-party is an appropriate plaintiff under the doctrine.

> **2.      Primex is Alternatively Entitled to Judgment as a Matter of Law as to Count II because the Claim is Barred by the Applicable Statute of Limitations**

Primex alternatively seeks judgment as a matter of law against Weather Tight and SunSet on the basis that the two-year statute of limitations applicable to AEMLD claims has run. *Smith v. Medtronic, Inc.*, 607 So. 2d 156 (Ala. 1992); Ala. Code § 6-2-38(l). In particular, Primex argues that "[u]nder Alabama law, a non-contract cause of action arises when the first indication of damage becomes apparent to the claimant." (Doc. 89 at 29 (citations omitted)). Weather Tight and SunSet do not dispute this point of law. Instead, and akin to their silence on the statute of limitations defense on the breach of warranty claim, Weather Tight and SunSet do not discuss the timeliness of their AEMLD claim at all.

Because, as discussed in more length in section III. B.1., *supra*, the undisputed evidence establishes that SunSet "first learned there were problems with the roof membrane ... in October, 2004," and that Weather Tight "first learned of the roof membrane problems at the end of 2004 or the beginning of 2005, prior to April, 2005," the third party complaint by SunSet should have been filed in October of 2006 and the third party complaint by Weather Tight should have been filed no later than the end of March, 2007. In fact, the third party complaint was filed on April 4, 2007.

Accordingly, the two-year statute of limitations has run on any AEMLD claim, and summary judgment is **GRANTED** in favor of Primex as to Count II for this additional reason.[6]

### D.    Common Law Indemnity - Count III

"The general rule in Alabama, subject to exceptions, is that joint tortfeasors are not entitled to indemnity or contribution. *Parker v. Mauldin*, 353 So. 2d 1375 (Ala. 1977)." *Crigler v. Salac*, 438 So. 2d 1375, 1385 (Ala. 1983). As the *Crigler* court further explained:

> Some exceptions to the rule that indemnity will not be allowed among joint wrongdoers are that a joint wrongdoer may claim indemnity where he has not been guilty of any fault, except technically or constructively, <u>or</u> where both parties are at fault, but the fault of the party from whom indemnity is claimed was the proximate or primary cause of the injury. *Mallory S.S. Co. v. Druhan*, 17 Ala. App. 365, 84 So. 874 (1920). *See* 42 C.J.S. Indemnity § 27 (1944).

*Crigler*, 438 So. 2d at 1385 (emphasis supplied).

As *Coates v. CTB, Inc.*, 173 F. Supp. 2d 1200 (M.D. Ala. 2001) discussed Alabama's exception to the common law indemnity rule:

> This exception is "that a joint wrongdoer may claim indemnity where he has not been guilty of any fault, except technically or constructively, or

---

[6]  The court does not reach Primex's contention that summary judgment is also appropriate under the AEMLD because it "was not <u>regularly</u> engaged in the business of manufacturing or selling roofing membrane such as the roofing membrane product which is the subject of this case." (Doc. 89 at 28 (emphasis added)).

where both parties are at fault, but the fault of the party from whom indemnity is claimed was the efficient cause of the injury. Where an injury results from a violation of a duty which one owes to another, the parties are not in pari delicto." *Mallory S.S. Co. v. Druhan*, 17 Ala. App. 365, 84 So. 874, 877 (1920); *see also J.C. Bradford & Co. v. Calhoun*, 612 So. 2d 396, 398 (Ala.1992); *Crigler v. Salac*, 438 So. 2d 1375, 1385 (Ala. 1983) (both discussing the exception and citing *Mallory* ). For example, in the *Mallory* case, an employer, held liable for an injury to his employee caused by defective ship loading equipment, was allowed to bring suit for indemnity against the manufacturer of the defective equipment. 84 So. at 877 ("An employer, against whom recovery has been had for injury to his employee, may, notwithstanding his negligence in not inspecting, enforce indemnity against one who is under obligation to him, as in this case, to furnish suitable appliances, the breach of which obligation caused the injury.").  The breach of implied warranties of merchantability and fitness for a particular purpose supported plaintiff's suit for indemnity. *Id.; see also* Restatement (Second) of Torts § 886B (indemnity is appropriate where "the indemnitor supplied a defective chattel . . . as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect," or "the indemnitee was induced to act by a misrepresentation on the part of the indemnitor, on which he justifiably relied").

<u>Critical to the *Mallory* court's reasoning was that the employer was guilty of only *passive* negligence, the failure to inspect the faulty equipment, and the manufacturer was guilty of *active* negligence in breaching its duty to supply safe products.</u>

*Coates*, 173 F. Supp. 2d at 1203 (footnote omitted) (emphasis by underlining added).

In this instance, Weather Tight and SunSet take the position that the general

rule precluding indemnity among joint tortfeasors does not apply because the record

demonstrates that they engaged in only passive negligence as opposed to proximately

18

causing the property damage injury to Teledyne.

> **1.    Primex Is Not Entitled to Summary Judgment as to SunSet's and Weather Tight's Claims for Common Law Indemnity**

Primex seeks summary judgment as to Count III on the basis that the undisputed facts show that Weather Tight and SunSet have not established mere passive negligence on their part.  In other words, Primex argues that Weather Tight and SunSet have failed to establish a prima facie claim of common law indemnity because they have not shown: (1) that Weather Tight and SunSet have not been guilty of any fault, except technically or constructively; <u>or</u> (2) that if both Weather Tight and/or SunSet and Primex were at fault, that Primex was the proximate cause of Teledyne's damages.  (Doc. 89 at 18)[7] (emphasis supplied).  Primex also argues that, because Weather Tight and SunSet seek indemnity, not contribution, Weather Tight and SunSet must also show that the entire damages suffered by Teledyne should be shifted solely to Primex.  (*Id*. at 18-19).

The court disagrees with Primex.  While the undisputed evidence is that Weather Tight supplied Primex with what Weather Tight's own expert states is defective santoprene material, which is not suitable for use as a roofing membrane,

---

[7] Citing *First Real Estate Corporation of America v. Winters*, 551 So. 2d 417, [419] (Ala. [Civ. App.] 1989)

that the roofing membrane was installed by SunSet, and that there were problems with that installation, the law does <u>not</u> require Weather Tight or SunSet to show that Primex was the sole proximate cause of Teledyne's damages. Rather, the law requires Weather Tight to show that <u>it</u> was not a proximate cause of Teledyne's damages and requires SunSet to show that <u>it</u> was not a proximate cause of Teledyne's damages. SunSet and Weather Tight argue, correctly, that, "[u]nder Alabama law, there can be more than one proximate cause of an injury. *See Looney v. Davis*, 721 So. 2d 152 (Ala. 1998)." (Doc. 105 at 5); *see also Crigler v. Salac*, 438 So. 2d 1375 (Ala. 1983). Thus, because there is a genuine issue of material fact as to whether Primex's actions or omissions proximately caused Teledyne's damages, Primex is not entitled to summary judgment as to Count III.

Therefore, Primex's motion for summary judgment is **DENIED** as to Count III.

### 2. <u>AES Is Not Entitled to Summary Judgment as to SunSet's and Weather Tight's Claims for Common Law Indemnity</u>

AES argues that it is entitled to summary judgment against Weather Tight and SunSet as to all of their claims, including Count III, because:

At deposition, Weather Tight clarified and limited its claims [against AES] to one contention:

Q:      . . .What are you accusing AES of in this matter?
A:      They sold me [Santoprene] 251 instead of 221,

> which is what I asked for as the product in Texas.
>
> …
>
> Q:    Anything else besides AES selling you 251 instead
> of 221 as to why you're suing them in this case?
>
> A:    I don't think so.

(Tab A, p. 674).  Thus Weather Tight's – and by extension SunSet's –
entire claims in this matter rest on the single contention that AES sold
Weather Tight the wrong grade of Santoprene and that this grade caused
the Teledyne roof failure.  Summary judgment is due because AES, in
fact, sold Santoprene grade 221 to Weather Tight.  (Tab R, pp. 52, 354;
Tab D).  Weather Tight used the 221 grade but chose to stop using it.
(Tab A, pp. 264-66, 580-81).  Thus, Weather Tight's own testimony
belies its contention that AES sold it the wrong grade of Santoprene.

(Doc. 102 at 12).

However, AES is asking this court to take a statement made by a 30(b)(6)

representative and turn it into a judicial admission which not only establishes the fact

"admitted" but prevents the party who made it from controverting it.  A statement

made in a deposition will rarely arise to the level of a judicial admission.  *See Fine*

*v. Ryan International Airlines*, 305 F.3d 746, 753 (7th Cir. 2002) ("Ryan also seems

to believe that Fine cannot now argue that any of the events she complained about in

her October 2 letter were discriminatory because she stated in her deposition that

there were no incidents that she considered sexually harassing from April 25, 1996,

until the date of her termination. But why not? A party is free to contradict her

deposition testimony at trial, although her opponent may then introduce the prior

statement as impeachment."); *see also Collins v. Wayne Corp.*, 621 F.2d 777, 782 (5th Cir. 1980)[8] ("Wayne hired Greene to investigate the bus accident and to report his conclusions.  In giving his deposition he was performing the function that Wayne had employed him to perform.  His deposition, therefore, was an admission of Wayne. <u>Greene's deposition testimony was not, of course, a binding judicial admission, and had the district court admitted Greene's deposition as an admission Wayne would have had an opportunity to explain why some of Greene's conclusions were not consistent with Wayne's position at trial</u>.") (emphasis added), *superseded by rule on other grounds as stated in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002);*Federal Sur. Co. v. City of Staunton, Ill*., 29 F.2d 9, 14 (5th Cir. 1928) ("Under the situation produced in the state court, the answers of the defendant had the same effect as its pleadings, since, under that practice, it was permissible to narrow the issues, just as is done in patent and admiralty cases in the federal court.  <u>The answers were therefore of a higher degree of proof than mere depositions</u>, and under the circumstances took the rank of judicial admissions prima facie, although they were not conclusive.") (emphasis added) (citations omitted); *Brown & Root, Inc. v. American Home Assur. Co.*, 353 F.2d 113, 116 (5th Cir. 1965) ("But except for those

---

[8]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

specialized, rare assertions characterized as judicial admissions, a party is entitled to explain an admission and even to retract it.  <u>When that is done, the factual evaluation of the admission vis-a-vis explanation, retraction, or repudiation, is for the trier of the fact.</u>") (emphasis added); *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) ("'Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them.'") (citing *Hill v. Federal Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941)); *Tidemann v. Nadler Golf Car Sales, Inc.*, 224 F.3d 719, 724 (7th Cir. 2000)."); *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission. Michael H. Graham, Federal Practice and Procedure § 6726, at 536 to 37.").

This is particularly true where the deponent is testifying as a 30(b)(6) corporate representative.  *See A.I. Credit Corp. v. Legion Insurance Co.*, 265 F.3d 630, 637 (7th Cir. 2001) ("The remainder of McPherson's arguments, which primarily concern the admissibility of the evidence on which A.I. Credit relied in opposing his motion for summary judgment, do not undermine our conclusions. McPherson notes that John Rago of A.I. Credit testified in his deposition that he never spoke with McPherson, and suggests in a footnote that A.I. Credit may not rely on Holsworth's

testimony that McPherson participated in the April conference call 'because Rago was A.I.'s Rule 30(b)(6) witness.' One sentence of . . . Rule [30(b)(6)] provides, 'The persons so designated shall testify as to matters known or reasonably available to the organization.' . . . McPherson apparently construes the Rule as absolutely binding a corporate party to its designee's recollection unless the corporation shows that contrary information was not known to it or was inaccessible.  Nothing in the advisory committee notes indicates that the Rule goes so far."); *see also Sanford Bros. Boats, Inc. v. Vidrine*, 412 F.2d 958, 963 n.3 (5th Cir. 1969) (recognizing in context of Jones Act lawsuit against tug owner that while prior deposition testimony of captain is available for impeachment purposes, it is unlikely "available as substantive evidence to establish the truth of its contents") (citations omitted).

Further, applying the reasoning set out at section III.D.1., *supra*, to AES's arguments in favor of summary judgment as to SunSet's and Weather Tight's common law indemnity claims, AES's motion is **DENIED** as to Count III.

## IV.    CONCLUSION AND ORDERS

For the reasons stated above, the court hereby **ORDERS** as follows:

1.    Primex's motion for summary judgment is **GRANTED** as to Counts I and II and **DENIED** as to Count III.

2.    AES's motion for summary judgment is **GRANTED** as to Counts I and

II and **DENIED** as to Count III.

**DONE** and **ORDERED** this the 24th day of September, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge